Breitel, J.
Defendant appeals from a conviction for unlawful possession of barbiturates as a misdemeanor (former Penal Law, § 1747-b). Following a hearing in the Criminal Court of the City of New York, defendant’s motion to suppress physical evidence was denied. Defendant was then tried before a one-Judge court without a jury and convicted. On May 23, 1967 he was sentenced to time served. The Appellate Term, Second Department, affirmed without opinion, one Justice dissenting.
The initial issue is whether the door-blocking of a taxicab by police officers who had followed the taxi without probable cause to believe that defendant, a passenger, possessed contraband constituted an illegal arrest thus rendering the evidence subsequently seized inadmissible. However, if there had been no arrest but only a routine surveillance, the subsidiary question is whether observing defendant drop three blue and orange capsules to the floor of the taxi after one of the officers identified himself constitutes probable cause for seizure of the capsules and arrest of defendant.
*161 At noon on February 20, 1967, Detective La Briola and Ms partner were in an automobile observing premises located at 4717 Fourth Avenue, Brooklyn. (Defendant testified that he knew narcotics were sold at that address.) He saw a taxicab drive up and park in front of the premises. The defendant, whom he had never seen before, left the taxi and entered the building. La Briola did not know where he had gone in the building, nor did he see defendant engage anyone in conversation. After a short interval defendant came out and re-entered the taxi. La Briola saw nothing in defendant’s hand at any time.
The taxi then made a “ U-turn ” and drove south on Fourth Avenue. La Briola started his car and ‘ ‘ took off after the taxicab.” When it stopped for a traffic light, La Briola drove his automobile directly behind the taxi.
The police officers got out and approached the taxi; La Briola on the left side, and his partner on the right. His partner knocked on the taxi’s right rear window with his police shield. As his partner was knocking on the window, La Briola observed the defendant look to his right, and then ‘ ‘ with his left hand he placed three capsules on the floor of the taxicab.” La Briola, believing them to be barbiturates, immediately opened the door, seized the capsules and placed the defendant under arrest.
La Briola testified that he went over to the taxicab solely to satisfy his suspicion as to whether defendant had barbiturates in his possession. He did not have a search or an arrest warrant. The taxicab driver had committed no traffic violation.
When askedif he could ‘ ‘ tell the difference between a vitamin pill and a barbiturate ” La Briola answered, “I don’t know”. In 20 previous arrests which he had made for the possession of pills, on only one occasion did the pills fail to contain either barbiturates or amphetamines.
The hearing Judge refused to suppress the evidence on the ground that the police officers had the right to go up to or stop a taxicab at anytime and place their shields on the window. It was reasoned that they may do this since taxicabs come under supervision of the police department-.
The People concede that the officers did not approach the taxicab for the purpose of investigating its operation. Also conceded is that the hearing Judge, therefore, denied the motion *162 to suppress on erroneous grounds. However, it is urged that the police have the power to make routine investigations, based on suspicion, merely by the stopping of a suspect, or a vehicle; and that, since the crime of possession occurred in the police officer’s presence, the subsequent arrest was lawful.
Defendant contends that he was placed under arrest upon the arrival of the police officers at the sides of the taxicab, and that the arrest being without probable cause, the evidence seized following it should have been suppressed.
The question of precisely when an arrest occurred is one of fact (Sibron v. New York, 392 U. S. 40, 67). Since the hearing court denied defendant’s motion for suppression on an erroneous ground, there must be a determination of whether the conduct of the officers amounted to an arrest or was only a routine surveillance of the defendant but grounded on more than baseless suspicion.
It is concluded that the case should be remanded to the hearing court for a determination as to when the arrest occurred.
When the police officers appeared at the windows of the taxi they had no probable cause for arrest (Rios v. United States, 364 U. S. 253, 261). Thus if the arrest occurred then, nothing which thereafter happened could validate the arrest or justify an incidental search. However, it may be determined, on the remand that there was no arrest at this time but rather only a routine surveillance, or, as described in the Rios case (supra), a case strikingly similar to this, that the officers “ approached the standing taxi only for the purpose of routine interrogation, and they had no intent to detain [defendant] beyond the momentary requirements of such a mission ” (id., at p. 262). If there had been no arrest, and what was later observed provides probable cause, a subsequent arrest would be lawful.
Assuming that the officers did not initiate their conduct with an illegal arrest, there would be probable cause for the later seizure and arrest. Although Detective La Brióla admitted he could not distinguish barbiturates from vitamin pills, he believed the capsules placed on the floor by defendant to be barbiturates. This was not unreasonable. The defendant, his attention first being drawn to the police officer knocking on the window to his right, was then observed placing the three capsules on the floor with his left hand. Such conduct under such circumstances *163 could be significant evidence of consciousness of guilt. La Brióla was, therefore, entitled to infer that contraband was being placed on the floor (compare, e.g., People v. White, 16 N Y 2d 270, cert. den. 386 U. S. 1008, with People v. Brown, 24 N Y 2d 421). Since what was placed did not look like the packaging for hard narcotics, such as heroin, it was likely that the capsules contained one of the contraband drugs covered by section 1747-b of the former Penal Law.
Accordingly, the judgment of conviction should be reversed and the case remanded for proceedings consistent with this opinion.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Jasen concur.
Judgment reversed and case remitted to the Criminal Court of the City of New York for further proceedings in accordance with the opinion herein.